# EXHIBIT C

CIVIL CASE INFORMATION STATEMENT
CIVIL CASES

IN THE CIRCUIT COURT OF PUTNAM COUNTY, WEST VIRGINIA

I. CASE STYLE:

CECIL HYPES,

    Plaintiff,

v.

CIVIL ACTION NUMBER: 12-C-25
THE HONORABLE Spaulding

MAXIM CRANE WORKS, L.P.,
and DAVID BARNETT
    Defendants.

| Defendant(s): | DAYS TO ANSWER | TYPE OF SERVICE |
|---|---|---|
| **Defendant's address:** Maxim Crane Works, L.P. c/o William E. Robinson, Esq. 101 Independent Ave. Nitro, WV 25143 | 30 | Personal |
| David Barnett 101 Independent Ave. Nitro, WV 25143 | | Process Server |

Original and three (3) copies of the Complaint furnished herewith.

II.   TYPE OF CASE:   Wrongful Termination

III.   JURY DEMAND:   Yes

IV.   DO YOU OR ANY OF YOUR CLIENTS OR WITNESSES IN THIS CASE REQUIRE SPECIAL ACCOMMODATIONS DUE TO A DISABILITY OR AGE?
Unknown at this time.

**ATTORNEY:**
Sean W. Cook (Bar # 7647)
Meyer Ford Glasser & Radman, PLLC
120 Capitol Street
Charleston, WV 25301
(304) 345-3900

**REPRESENTING:** Plaintiff

Dated: 01/26/12

Sean W. Cook

IN THE CIRCUIT COURT OF PUTNAM COUNTY, WEST VIRGINIA

**CECIL HYPES,**

    Plaintiff,

v.                                      Civil Action No. 12-C-25

**MAXIM CRANE WORKS, L.P.,**
**and DAVID BARNETT,**

    Defendants.

## SUMMONS

TO:    MAXIM CRANE WORKS, L.P
         c/o William Robinson, Esq.
         Dinsmore & Shohl
         Huntington Square
         900 Lee St., Suite 600
         Charleston, WV 25301

IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby summoned and required to serve upon Sean W. Cook of Meyer Ford Glasser Radman, PLLC, Plaintiff's attorney, whose address is Post Office Box 11090, Charleston, West Virginia 25339, an Answer, including any related counterclaim you may have, to the Complaint filed against you in the above-styled civil action, a true copy of which is herewith delivered to you. You are required to serve your answer within **30** days after service of this Summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint and you will be thereafter barred from asserting in another action any claim you may have which must be asserted by counterclaim in the above-styled civil action.

Dated: 1/30/12                              Ronnie W. Matthews/cjb
                                                      Circuit Clerk

IN THE CIRCUIT COURT OF PUTNAM COUNTY, WEST VIRGINIA

CECIL HYPES,

    Plaintiff,

v.                                                    Civil Action No. 12-C-25

MAXIM CRANE WORKS, L.P.,
and DAVID BARNETT,

    Defendants.

## SUMMONS

TO:   DAVID BARNETT
         101 Independent Ave.
         Nitro, WV 25143

IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby summoned and required to serve upon Sean W. Cook of Meyer Ford Glasser Radman, PLLC, Plaintiff's attorney, whose address is Post Office Box 11090, Charleston, West Virginia 25339, an Answer, including any related counterclaim you may have, to the Complaint filed against you in the above-styled civil action, a true copy of which is herewith delivered to you. You are required to serve your answer within 30 days after service of this Summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint and you will be thereafter barred from asserting in another action any claim you may have which must be asserted by counterclaim in the above-styled civil action.

Dated: 1/30/12                                            Ronnie W Matthews/gb
                                                                Circuit Clerk

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

CECIL HYPES,

    Plaintiff,

v.                                          Civil Action No. 12-C-25

MAXIM CRANE WORKS, L.P.,
and DAVID BARNETT,

    Defendants.

## COMPLAINT

Comes now the Plaintiff, Cecil Hypes ("Plaintiff" or "Mr. Hypes"), through his counsel Larry O. Ford and Sean W. Cook of Meyer Ford Glasser & Radman, PLLC, and submits his complaint against Defendants Maxim Crane Works, L.P. ("Maxim" or "the company") and David Barnett, for violations of the West Virginia Human Rights Act, W. Va. Code § 5-11-1, *et seq.* ("WVHRA") and the common law of the State of West Virginia. In further support of his claims, Mr. Hypes states as follows:

## PARTIES

1. At all times relevant to this action, Mr. Hypes was a citizen of the State of West Virginia and employed as a salesperson for Maxim at the company's branch office in Nitro, West Virginia ("Nitro office"). Mr. Hypes is currently sixty-five years of age.

2. Defendant Maxim is a company doing business in Nitro, Kanawha County, West Virginia, and throughout the State of West Virginia.

3. Defendant Barnett, upon information and belief, is a citizen of the State of West Virginia, and at all times relevant to this action, held a supervisory position with Defendant Maxim at the company's Nitro branch office.

## JURISDICTION

4.   Pursuant to W. Va. Con., Art. 8, § 6, this Court has subject matter jurisdiction over the statutory claims brought by the Plaintiff against the Defendants.

5.   Venue is proper because the events that form the basis for the Plaintiff's causes of action alleged herein arose primarily in Kanawha County, West Virginia, and because the Defendants are subject to the personal jurisdiction of this Court.

## FACTS

6.   Mr. Hypes began his employment as a salesperson with Maxim in or about March of 1997.

7.   In or about July of 2005, Mr. Hypes underwent quadruple bypass open-heart surgery. Despite the fact that he was officially on sick leave until in or about January of 2006, Mr. Hypes continued performing his sales duties from home during his recovery.

8.   Approximately four months after returning to work, Mr. Hypes was approached by his superiors at Maxim and encouraged to take an extended period of time off for health reasons. However, Mr. Hypes had made an adequate recovery from his heart surgery, and was not experiencing any significant health problems at the time that prohibited him from continuing in his employment position with Maxim. Thus, Mr. Hypes declined this "offer" from Maxim.

9.   In or about 2007, the work schedule Mr. Hypes had operated under since he began his employment at Maxim was changed dramatically. At this time, Mr. Hypes' superiors, including Defendant Barnett, also began aggressively scrutinizing his daily work itineraries and performance. In support of their actions, Maxim officials cited their suspicion that Mr. Hypes was not adequately performing his work duties. Notably, Mr. Hypes was not aware of any previous concerns or complaints on behalf of Maxim related to his work performance.

10.   In or about June of 2008, a corporate officer of Maxim was inexplicably assigned to

accompany Mr. Hypes on a weekly basis during sales calls.

11. Shortly thereafter, Maxim reconveyed its previous "offer" to Mr. Hypes, and encouraged him to discontinue in his employment position with the company, apply for short-term disability benefits, and eventually transfer to permanent-disability status. As Mr. Hypes still did not require disability benefits and desired to continue working, he once again declined Maxim's "offer".

12. In or about June of 2008, a individual significantly younger than Mr. Hypes was hired by Maxim to work at its Nitro office. Subsequently, Mr. Hypes was directed by his superiors at Maxim to transfer a portion of his sales customers to this new employee.

13. Mr. Hypes began experiencing problems with his back and legs, and visited a physician for evaluation and treatment in or about March of 2010.

14. In or about of April of 2010, Mr. Hypes was called into a meeting with his superiors at Maxim, who told him that he was "getting some age on him", and asked when he planned on retiring. Mr. Hypes was then directed to train a significantly younger employee for the position that Mr. Hypes then held as a salesperson at Maxim.

15. Subsequently, in or about May of 2010, Mr. Hypes informed his superiors at Maxim and that he was experiencing significant problems with his back and legs, and that he had been seeing a physician with regard to these particular health problems. As such, Mr. Hypes requested that he be assigned to light duty.

16. Immediately after this conversation, Mr. Hypes received Workers Compensation forms from the Human Resources Department of Maxim, despite the fact that he had neither requested such forms nor indicated that he was planning to pursue Workers Compensation benefits. Nevertheless, Mr. Hypes was directed to complete these forms and return them immediately.

17. At this time, with the express permission of Maxim, Mr. Hypes was working from home and

performing his employment responsibilities with Maxim at a level that met the company's reasonable expectations.

18. On or about June 4, 2010, Mr. Hypes' treating physician, Dr. Roland Meffert, submitted a report indicating that was being treated for lower back and leg pain since in or about March of 2010, and recommended a course of pain management treatment. In his report, Dr. Meffert also noted that Mr. Hypes' condition worsened with long periods of driving and sitting. However, Dr. Meffert approved Mr. Hypes' express request to continue light-duty work at Maxim.

19. Accordingly, with ongoing permission from Maxim, Mr. Hypes continued to work from home between the approximate time period of June 25 and August 20, 2010, and continued successfully performing his employment duties.

20. On or about the morning of August 20, 2010, one of Mr. Hypes' superiors informed him that Maxim would be reclaiming his company computer and cell phone, and told Mr. Hypes that he was prohibited from coming to the Nitro office. Mr. Hypes met this and another Maxim official in a local parking lot and turned over these items. One of the Maxim officials then told Mr. Hypes that he was in bad shape, not coming to work, and warned Mr. Hypes to not take any further action regarding his employment with the company. Upon information and belief, a twenty-five year old employee of Maxim was immediately promoted to replace Mr. Hypes in the sales position that he had previously occupied with the company.

## COUNT I
## AGE DISCRIMINATION

21. Plaintiff incorporates and repeats by reference paragraphs 1 through 20 above.

22. Mr. Hypes is an individual over the age of forty, and is thus a protected person under the WVHRA.

23. The Defendants subjected Mr. Hypes to adverse employment actions. Such adverse employment actions include, but are not limited to, actually and/or constructively discharging Mr. Hypes from his position as a salesperson at Maxim.

24. But for his age, the Defendants would not have subjected Mr. Hypes to these adverse employment actions, or at the very least, Mr. Hypes' age was a substantial motivating factor in these adverse employment actions taken against him by the Defendants.

25. The Defendants' actions towards Mr. Hypes violate the provisions of the WVHRA that prohibit discrimination in employment based on age.

26. As a result of the Defendants' discriminatory practices, Mr. Hypes has suffered and continues to suffer the damages that are articulated throughout this Complaint.

## COUNT II
## DISABILITY DISCRIMINATION

27. Plaintiff incorporates and repeats by reference paragraphs 1 through 26 above.

28. At all times relevant to this action, Mr. Hypes suffered and continues to suffer from physical impairments that substantially limit one or more of his major life activities. Such limitations include, but are not limited to, the inability to effectively perform functions such as driving extended distances, walking, and other activities that are of central importance to daily life.

29. Mr. Hypes' physical impairments related to his back and legs are well-documented in medical records related to the treatment he received from his physicians. Furthermore, the Defendants regarded and perceived Mr. Hypes as being disabled.

30. Despite his disability, Mr. Hypes was able to perform the essential functions of the sales position he held with Maxim, and he was otherwise qualified to perform and had performed these sales functions at a level that met the Defendants' reasonable expectations.

31. Accordingly, at all times pertinent to this action, Mr. Hypes was a qualified individual with a disability under the WVHRA.

32. The Defendants discriminated against Mr. Hypes on the basis of his disability in regard to his advancement, discharge, and other terms, conditions and privileges of his employment.

33. As a result of the Defendants' discriminatory practices, Mr. Hypes has suffered and continues to suffer the damages that are articulated throughout this Complaint.

## COUNT III
## FAILURE TO PROVIDE REASONABLE ACCOMMODATION IN EMPLOYMENT

34. Plaintiff incorporates and repeats by reference paragraphs 1 through 33 above.

35. As stated above, Mr. Hypes is a qualified individual with a disability, and is thus a member of a protected class under the WVHRA.

36. The Defendants had actual and/or constructive notice of Mr. Hypes' disability and medical restrictions, and Mr. Hypes requested a reasonable accommodation for his known physical limitations.

37. Furthermore, despite his disability, Mr. Hypes was able to continue performance of the essential functions of his employment position with Maxim.

38. The Defendants expressly refused Mr. Hypes' request for a reasonable accommodation to continue in his employment position with Maxim, despite the fact that doing so would in no way have created an undue hardship to the operation of Maxim's business.

39. The Defendants failed in their obligation to provide a reasonable accommodation that would allow Mr. Hypes to continue in his employment position, and as a result, he has suffered and continues to suffer the damages that are articulated throughout this Complaint.

## COUNT IV
## WRONGFUL DISCHARGE

40. Plaintiff incorporates and repeats by reference paragraphs 1 through 39 above.

41. Mr. Hypes is a qualified individual with a disability, and is thus a member of a protected class under the WVHRA.

42. Mr. Hypes was actually and/or constructively discharged from his employment by the Defendants. At the time of his termination, Mr. Hypes was performing his job at a level that met the Defendants' reasonable expectations.

43. The circumstances surrounding Mr. Hypes's termination raise the reasonable and probable inference that he was discharged from employment as the result of unlawful discrimination.

44. Accordingly, Mr. Hypes was wrongfully discharged by the Defendants, and as a result, he has suffered and continues to suffer the damages that are articulated throughout this Complaint.

## COUNT V
## INTENTIONAL/NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

45. Plaintiff incorporates and repeats by reference paragraphs 1 through 44 above.

46. The aforementioned actions of the Defendants have caused Mr. Hypes substantial and severe emotional distress.

47. Defendants' actions were designed to intentionally cause Mr. Hypes emotional distress. Alternatively, Defendants knew or should have known that their actions would cause Mr. Hypes emotional distress.

48. As a direct and proximate result of Defendants' actions and/or inactions, Mr. Hypes has experienced severe emotional and mental distress, humiliation, anxiety, embarrassment, aggravation, annoyance and inconvenience, and as a result, he has suffered and continues to suffer the damages that are articulated throughout this Complaint.

## COUNT VI

## PUNITIVE DAMAGES

49. Plaintiff incorporates and repeats by reference paragraphs 1 through 48 above.

50. The Defendants had actual and/or constructive knowledge of the discriminatory and unlawful conduct that was perpetrated against Mr. Hypes.

51. Despite this knowledge, the Defendants perpetrated and/or permitted these unlawful and discriminatory actions to occur towards Mr. Hypes.

52. The Defendants' actions and/or inactions were willful, wanton, and carried out with reckless disregard for the legal rights of Mr. Hypes, thereby justifying an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Hypes prays for the following relief:

(a) That this Court enter a permanent injunction against Maxim ordering that it establish an on-going training program for employees regarding age, disability, and all forms of discrimination in the workplace;

(b) That he be awarded back pay, including all benefits for which he would have been eligible but for the Defendants' discriminatory and unlawful conduct;

(c) That the he be awarded front pay, including all benefits for which he would have been eligible but for the discriminatory and unlawful conduct complained of herein, in an amount to be determined at trial;

(d) That he be awarded compensatory damages in an amount to be determined by a jury for the severe emotional and mental distress, humiliation, anxiety, embarrassment, depression, aggravation, annoyance and inconvenience that he has suffered as a result of the Defendants' discriminatory and unlawful conduct;

(e) That he be awarded all out of pocket losses suffered as a result of Defendants' discriminatory and unlawful conduct;

(f) That he be awarded prejudgment and post-judgment interest on any and all damages, as provided by applicable law;

(g) That punitive damages be assessed against the Defendants;

(h) That he be awarded their costs of litigation, including but not limited to, reasonable attorneys' fees, in accordance with the WVHRA; and

(i) That he be awarded such other and further relief as this Court deems appropriate.

**A JURY TRIAL IS DEMANDED.**

<u>**CECIL HYPES**</u>
By Counsel

~~Larry O~~. Ford ( ~~WVSB~~ # 1241)
Sean W. Cook (WVSB # 10432)
Meyer Ford Glasser & Radman, PLLC
120 Capitol Street
Charleston, WV 25301
Telephone: (304) 932-2850
Fax: (304) 345-3935